UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| **TEMPIE WILLIAMS,** | ) <br> ) |
| **Plaintiff,** | ) <br> ) |
| v. | )    Case No. 2:16-cv-00035-NCC <br> ) |
| **NANCY A. BERRYHILL,**[1] <br> **Acting Commissioner of Social Security,** | ) <br> ) <br> ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Tempie Williams ("Plaintiff") for Child's Insurance Benefits ("CIB") under Title II of the Act, 42 U.S.C. §§ 401, *et seq.*, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 16), and Defendant has filed a brief in support of the Answer (Doc. 21). The Parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 7).

### I. PROCEDURAL HISTORY

Plaintiff filed her applications for CIB and SSI on January 25, 2013 (Tr. 157-64). Plaintiff was initially denied on March 6, 2013, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 95-99, 101). After a hearing, by two decisions dated November 26, 2014, the ALJ found Plaintiff not disabled (Tr. 30-47; Tr. 419-433). On March

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

21, 2016 and May 24, 2016, the Appeals Council issued decisions denying Plaintiff's request for review (Tr. 1-10). As such, the ALJ's decisions stand as the final decision of the Commissioner.

## II. DECISIONS OF THE ALJ[2]

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 25, 2013, the alleged onset date (Tr. 35). The ALJ found Plaintiff has the severe impairments of oppositional defiant disorder ("ODD"),[3] attention deficit hyperactivity disorder ("ADHD")[4] and mood disorder NOS[5] but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 35-36). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitation (Tr. 37). She is limited to unskilled work with only occasional interaction with the public, co-workers, and supervisors (*Id.*). The ALJ found Plaintiff has no past relevant work, but that there are jobs that exist in significant numbers in the

---

[2] Although the ALJ issued two separate decisions addressing the two wage earners, Ms. Ruby Louise Williams and Mr. Oscar Virgil Williams, the Court notes that the decisions are nearly identical and the findings of the ALJ are identical. The Court also notes that the decision addressing the CIB claim using Mr. Oscar Virgil Williams as the wage earner also includes Plaintiff's claim for Supplemental Security Income Benefits. As such, the Court will cite to this decision provided at Tr. 33-47.

[3] Oppositional Defiant Disorder is defined as "[a] behavior disorder characterized by a persistent pattern of defiant, disobedient, and hostile behavior towards authority figures; a frequent loss of temper, arguing, becoming angry or vindictive, or other negative behaviors." *Oppositional Defiant Disorder*, PubMed Health, Nat'l Inst. of Health, https://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0024865/ (last visited Aug. 4, 2017).

[4] "Attention-deficit/hyperactivity disorder (ADHD) is a brain disorder marked by an ongoing pattern of inattention and/or hyperactivity-impulsivity that interferes with functioning or development." *Attention Deficit Hyperactivity Disorder*, Nat'l Inst. of Health, https://www.nimh.nih.gov/health/topics/attention-deficit-hyperactivity-disorder-adhd/index.shtml (last visited Aug. 4, 2017).

[5] NOS stands for "not otherwise specified."

national economy that she can perform, including night cleaner, linen room attendant, and stubber (Tr. 42-43). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 43). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

### IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff asserts that (1) the ALJ erred by failing to support his RFC determination with some medical evidence; (2) the ALJ erred by not

providing a narrative link between the medical evidence and the result; and (3) the ALJ erred in his analysis of the medical opinion evidence of record. For the following reasons, the Court finds that Plaintiff's argument is without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

The Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations.' " *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

**1. Medical Opinion Evidence**

Plaintiff asserts that the ALJ erred by failing to appropriately consider the medical opinion evidence of record (Doc. 16 at 11-13). Specifically, Plaintiff argues that while the opinions of Ms. Ann Elliot and Ms. Melissa Whisenand showed that Plaintiff was significantly

6

limited even in basic abilities, the ALJ rejected these in favor of a selective reading of the remaining record (*Id.* at 11).

Ms. Ann Elliot, LCSW,[6] Plaintiff's long-time therapist, submitted a Medical Source Statement-Mental (MSSM) and two narrative letters (Tr. 354, 256-57, 356-57). In the MSSM, Ms. Elliot opines that Plaintiff would have marked and extreme limitations in functioning in the following areas: the ability to remember locations and work-like procedures; the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to make simple work related decisions; the ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to travel in unfamiliar places or use public transportation; and the ability to set realistic goals or make plans independently (Tr. 356-57). Ms. Elliot further opines that Plaintiff would have bad days causing her to need to leave work prematurely or be absent and would likely be "off task" 25% or more of the time (Tr. 356).

In her letters, Ms. Elliot indicates that Plaintiff is unable to live independently and could not be trusted to care for herself (Tr. 353-54). In her letter dated March 5, 2011, Ms. Elliot states that Plaintiff has debilitating issues due to early infancy head trauma and low intellect (Tr. 354). While "it has been quite some time since [Plaintiff] has assaulted someone[,] . . . this amount of

---
[6] Licensed Clinical Social Worker.

progress will still not allow her to become independent" (*Id.*). "She cannot successfully live on her own without lots of community services and supervision" (*Id.*). Ms. Elliot further indicates that Plaintiff has issues soiling herself, communicating and stealing (*Id.*). In her second letter, dated September 16, 2014, Ms. Elliot indicates that Plaintiff "has poor impulse control and must be supervised to assure her personal safety" (Tr. 353). Ms. Elliot further states that Plaintiff is unable to stay on task and complete project (*Id.*). Ms. Elliot concludes that Plaintiff "will always need supervision and at this time is unable to successfully live on her own" (*Id.*).

Ms. Melissa Whisenand, Plaintiff's Department of Mental Health caseworker, also submitted a letter on behalf of Plaintiff. In her letter dated September 15, 2014, Ms. Whisenand states that Plaintiff needed to be monitored in all social situations to ensure her safety and ensure appropriate behavior (Tr. 256-57). Specifically, Ms. Whisenand indicates that, among other things, Plaintiff "engages in behaviors that are aggressive or self-injurious," "has difficulty expressing," and "has difficulty in carrying out appropriate daily routines with regards to personal hygiene, financial management, household chores and nutritional needs" (*Id.*).

The Court finds that the ALJ gave proper weight to the opinions of Ms. Elliot and Ms. Whisenand. The ALJ correctly determined that Ms. Elliot and Ms. Whisenand were not acceptable medical sources under the applicable rules (Tr. 40). "Acceptable medical sources include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists." *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (citing 20 C.F.R. § 416.913(a) (effective until Mar. 26, 2017)). Instead, Ms. Elliot and Ms. Whisenand are "other sources." 20 C.F.R. § 416.913(d)(1) (effective until Mar. 26, 2017). As "other sources," Ms. Elliot and Ms. Whisenhand are not qualified to prepare a "medical source's opinion" as defined by the regulations. *See* 20 C.F.R. § 416.927(a)(1). An ALJ has more discretion when analyzing

other sources and is permitted to consider any inconsistencies found within the record. 20 C.F.R. § 416.913(a), (d); *Tindell*, 444 F.3d at 1005; Social Security Ruling ("SSR") 06-03p ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source.'"). *See Raney*, 396 F.3d at 1010 (Providing that in considering the opinions of a medical source that is not an "acceptable medical source," "the ALJ has more discretion and is permitted to consider any inconsistencies found within the record.").

The ALJ afforded Ms. Elliot's and Ms. Whisenand's opinions "little weight," finding their opinions "at odds with the remainder of the file" (Tr. 40). Specifically, the ALJ highlighted the inconsistency of these opinions with Plaintiff's relatively unremarkable mental examinations (*Id.*). For example, the ALJ notes that, regarding Plaintiff's cognitive limitations, the record does not indicate a cognitive issue (*Id.*). Further, the ALJ found that while Plaintiff "has some issues relating to others," Plaintiff's behavior is generally controlled with medication as further evidenced by Plaintiff's consistent GAF[7] scores in the mid-fifties indicating that she is capable of success in the occupational setting with limitations (Tr. 40-41). *See, e.g.,* Tr. 359 (GAF score of 54), 388-89 ("Pt. has been doing better with medication"; GAF score of 50), 398 (GAF score of 60). When an opinion is "inconsistent or contrary to the medical evidence as a whole, [it is] entitled to less weight." *Krogmeier*, 294 F.3d at 1023. *See also* 20 C.F.R. § 416.927 ("Generally, the more consistent an opinion is with the record as a whole, the more weight we

---

[7] Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th ed. rev. 2000). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. *Id.* at 32.

will give that opinion"). The ALJ also specifically noted that Ms. Elliot's statements and evaluation are conclusory (Tr. 40). *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008) (the weight given a physician's opinion is limited if the opinion consists only of conclusory statements). *See also Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (Commissioner may give physician's opinion less deference when it is based on claimant's subjective complaints rather than objective medical evidence). Finally, again regarding Ms. Elliot, the ALJ indicated that Ms. Elliot's treatment notes are not in evidence, making it impossible to determine the extent of Ms. Elliot's treatment of Plaintiff and whether her conclusory statements and evaluations are supported by her treatment notes (Tr. 40). Indeed, although Ms. Elliot "began seeing [Plaintiff] when she was in grade school," the transcript does not include any records from Ms. Elliot or her office, the Lighthouse Counseling Center. *See Traylor ex rel. Traylor v. Colvin*, 538 F. App'x 730 (8th Cir. 2013) (finding the ALJ gave proper weight to the medical opinion of a chiropractor when the record contained no treatment records from the chiropractor and the ALJ's RFC determination was consistent with the medical evidence).

Accordingly, the Court finds that the ALJ gave proper weight to Ms. Elliot's and Ms. Whisenand's opinions upon determining his RFC, and that the ALJ's decision, in this regard, is based on substantial evidence.

### 2. RFC Supported by "Some" Medical Evidence

Next, Plaintiff asserts that the ALJ erred by, failing to support his RFC assessment with any medical evidence (Doc. 16 at 10). Indeed, although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "claimant's residual functional capacity is a medical question." *Lauer*, 245 F.3d at 704 (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of

the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591. Express consideration of state agency physicians is sufficient to satisfy this standard. *See Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016).

The Court finds that the ALJ properly supported her residual functional capacity determination with "some" medical evidence. Specifically, the ALJ reviewed the opinion evidence of record. First, as addressed in more detail above, the ALJ appropriately reviewed the opinion evidence from Ms. Elliot and Ms. Whisenand, affording their opinions "little weight."

Second, the ALJ considered the medical opinion evidence from state agency consultant, Stephen S. Scher, Ph.D., affording his opinion "partial weight" (Tr. 68-91). After reviewing the evidence submitted on behalf of Plaintiff up to that point, Dr. Scher issued his case analyses[8] on March 5, 2013 regarding Plaintiff's medically determinable impairments and their severity (Tr. 68-91). Dr. Scher determined that Plaintiff has the medically determinable impairments of ODD, Affective Disorders, and ADD/ADHD (Tr. 71). Dr. Scher found Plaintiff moderately limited in the following abilities: to maintain attention and concentration for extended periods; to sustain an ordinary routine without special supervision; to work in coordination with or in proximity to

---

[8] Dr. Scher issued an analysis for each of Plaintiff's three types of disability claims—her original SSI claim, incorrectly notes as a disability insurance benefits claim, and her two CIB claims under each wage earner. As the analysis is nearly identical throughout, the Court will reference only the first of the three analyses.

11

others without being distracted by them; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 73-74). Dr. Scher further opined that Plaintiff "can perform where interpersonal skills are superficial and not dependent on intensive or extensive interpersonal interaction for task completion" (Tr. 74). Dr. Scher is a highly qualified expert who offered an opinion consistent with the record as a whole. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence); *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2012) (State agency psychologist's opinion supported the ALJ's finding that claimant could work despite his mental impairments); *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) (finding the ALJ did not err in considering State agency psychologist's opinion along with the medical evidence as a whole). In his RFC determination, the ALJ clearly took into consideration the limitations indicated by Dr. Scher, restricting Plaintiff to unskilled work with only occasional interaction with the public, co-workers, and supervisors (Tr. 37).

Third, although not medical evidence, the ALJ considered the statement of Tempra Williams, Plaintiff's close relative,[9] in his thorough review (Tr. 41, 259). In a letter sent to the SSA on October 6, 2014, Ms. Williams indicates that Plaintiff "has displayed many behavioral concerns that could jeopardize her safety and the safety of others" (Tr. 259). Ms. Williams further states that Plaintiff is "emotionally unstable" and "exhibits explosive and impulsive behaviors" (*Id.*). The ALJ found Ms. Williams not to be a disinterested observer and her letter to be inconsistent with the medical records indicating that Plaintiff's concentration and behavioral

---

[9] The record does not indicate the exact relationship between Tempra Williams and Plaintiff. In her letter regarding Plaintiff, Ms. Williams indicates that she has known Plaintiff "since she came into my grandmother's care at 19 months" (Tr. 259)

problems improve with medication (Tr. 41). Indeed, the medical records show Plaintiff's impairments are largely controlled on medication (*See* Tr. 388-89).

To that end, the ALJ also considered Plaintiff's significant improvement when compliant with treatment (Tr. 40). *See Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (conditions which can be controlled by treatment are not disabling); *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009); *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling). The record reflects that when Plaintiff was taking her medication, neither she nor her mother had any complaint and they denied any side effects (Tr. 393). However, as noted by the ALJ, at times Plaintiff stopped taking her medication (Tr. 281, 388, 414). While Plaintiff asserts that her noncompliance was in part due to the nature of her mental impairments, the record indicates that she was not prevented from taking her medication. As the ALJ indicated, the evidence in the record does not indicate any cognitive issues or memory problems (Tr. 40, 389 ("Memory and Concentration are fair"), 391 (Same), 392 ("Concentration and immediate recall good. Memory for recent and remote events intact. Judgment good. Insight fair.")). *Cf. Pate-Fires v. Astrue*, 564 F.3d 935, 945-47 (8th Cir. 2009).

The ALJ further conducted a full and thorough review of the medical evidence (*See* Tr. 38-41). Of note and in support of the ALJ's RFC determination, the ALJ indicated that various records reflect "mood instability" or "irritability and anger" usually noted in conjunction with Plaintiff's noncompliance with her prescribed medication (Tr. 39, 323-24, 331, 391). Regardless, the ALJ appears to have taken these records of instability into account when concluding that Plaintiff had some restriction in her interaction with the public, co-workers, and supervisors (Tr. 37). The ALJ also found that school records supported this conclusion;

"[e]xcept for occasionally losing her temper, the [Plaintiff] was asymptomatic in the classroom" (Tr. 39, 316-17).

In addition to his review of the medical evidence, the ALJ also appropriately assessed Plaintiff's credibility, noting that Plaintiff's testimony was inconsistent with the record (Tr. 41). Specifically, Plaintiff testified that her mental impairments caused her to be in special education for all of her classes and that she was suspended almost every day due to behavioral problems (Tr. 56). However, as noted by the ALJ, this testimony was contradicted by Plaintiff's school records (Tr. 182, 293-309). Under her individualized education program (IEP) from December 10, 2012, Plaintiff participated in regular education classes 88% of the time (Tr. 182). Further, Plaintiff was only suspended once during high school and graduated on time (Tr. 293).

The ALJ additionally considered Plaintiff's activities of daily living in assessing her subjective complaints regarding her limitations (Tr. 41). In an adult function report dated January 28, 2013, Plaintiff's mother indicates that Plaintiff is able to do chores such as laundry, sweeping, making her bed, and preparing simple meals (Tr. 36, 208). *See Ponders v. Colvin*, 770 F.3d 1190 (8th Cir. 2014) (holding that substantial evidence supported the ALJ's denial of disability benefits in part because claimant "performs light housework, washes dishes, cooks for her family, does laundry, can handle money and pays bills, shops for groceries and clothing, watches television, drives a vehicle, leaves her house alone, regularly attends church, and visits her family"). Plaintiff also worked briefly in a sheltered setting (Tr. 392). 20 C.F.R. § 416.973(c) ("[W]ork done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level."). Also, as the ALJ noted, while Plaintiff receives some help from her mother, Plaintiff is also the primary care-giver to her infant child (Tr. 41, 390). *See Jones v. Astrue*, 619 F.3d 963, 975 (8th Cir. 2010).

Finally, to the extent the Plaintiff identifies records that support Plaintiff's allegations, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

**3. Narrative**

Finally, Plaintiff argues that the ALJ erred by not providing a narrative link between the medical evidence and the result (Doc. 16 at 14).

An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. "In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis ... and describe the maximum amount of each work related activity the individual can perform based on the evidence available in the case record. SSR 96-8p at *7. "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "Moreover, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.* (highly unlikely that ALJ did not consider and reject physician's opinion when ALJ made specific references to other findings set forth in physician's notes).

Plaintiff appears to suggest that the ALJ is required to format his opinion to explicitly match her severe impairments to each RFC limitation. However, in this case, as more fully described above, the RFC determination and the discussion regarding the same is detailed and

15

takes into consideration all of Plaintiff's mental impairments.  Based on the foregoing, the Court finds the ALJ's opinion provides a sufficient narrative of the medical evidence relied upon to support the limitations in the RFC and reversal on this basis is not warranted.

## V. CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 28th day of September, 2017.

　　/s/ Noelle C. Collins　　　　
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE
